# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:11-cr-00334-APG-GWF |
| ) | |
| vs. ) | **FINDINGS &** |
| ) | **RECOMMENDATIONS** |
| TRACEY BROWN, ) | |
| ) | **RE: Motion to Suppress (#54)** |
| Defendant. ) | |
| ) | |

This matter is before the Court on Defendant Tracey Brown's Motion to Suppress Evidence for Fourth Amendment Violation and Unconstitutional Suggestive Identification Procedures (#54), filed on January 17, 2013. The Government filed its Response in Opposition to Defendant's Motion to Suppress (#59) on February 1, 2013. The hearing on this motion was vacated on March 8, 2013 upon the parties advising the Court that a tentative plea agreement had been reached. The parties were unable to reach final agreement on a plea, however, and the hearing on this matter was subsequently rescheduled for October 1, 2013. The Court conducted an evidentiary hearing on October 1, 2013 regarding the portion of Defendant's motion seeking to suppress evidence obtained as the result of the stop of the vehicle in which Defendant was riding as a passenger. The parties stipulated to the relevant facts concerning Defendant's motion to suppress the eyewitness identification of Defendant.

## FACTUAL BACKGROUND

The Indictment (#1) charges Defendant Tracey Brown with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951, brandishing and discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (iii) and 18 U.S.C. § 2; interference with commerce by robbery in violation of 18 U.S.C. § 1951 and 18 U.S.C.

§ 2; brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A(ii) and 18 U.S.C. § 2; and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). With the exception of the felon in possession charge, the charges in the indictment arise out of the alleged robbery of a Rebel Gas Station located at 1080 S. Rainbow Boulevard, Las Vegas, Nevada on July 26, 2011.

According to the Las Vegas Metropolitan Police Department arrest report[1], on July 26, 2011 at approximately 12:52 A.M. a black male subject entered the Rebel Gas Station Store located at 1080 S. Rainbow Boulevard, Las Vegas, Nevada with a 12 gauge shotgun and pointed it at the store clerk. *Government's Response (#59), Exhibit 1.* The subject demanded that the clerk go to the cash register, open it and hand over all the money. The clerk complied with the robber's instructions and placed the money in a bag together with 16 packages of Marlboro cigarettes requested by the robber. The robber took the bag and ordered the clerk to get on the floor and count to ten. The robber then fled the store. Neither the arrest report, nor the written voluntary statement provided by the store clerk indicate that the store clerk saw any motor vehicle associated with the robber. *Government's Response (#59), Exhibit 2*.

According to the arrest report, at approximately 12:54 A.M., Las Vegas City Marshal M. Triplett observed a Chevrolet Cavalier automobile traveling north on Rainbow Boulevard and approaching the southbound on-ramp to U.S. Highway 95. The vehicle's headlights were not illuminated. Marshal Triplet attempted to stop the vehicle, which eventually did stop after exiting onto southbound Jones Boulevard. The vehicle passenger fled after the vehicle stopped. A police officer subsequently observed the "subject" at the intersection of Elton and Wallace streets. The officer observed the subject holding a semi-automatic handgun. The subject again fled and the officer lost sight of him. The police established a perimeter in the area with K-9 units. The subject was located in the yard at 6113 Elton where he was taken into custody by officers after sustaining a dog bite. The subject was subsequently identified as Defendant Tracey Brown.

---

[1] The Court relies, for factual background, on those portions of the arrest report and voluntary statement of the store clerk that are not in dispute for purposes of Defendant's Motion to Suppress (#54).

A police officer thereafter brought the Rebel Gas Station store clerk to the location where Defendant Brown was detained. The clerk identified Mr. Brown as the individual who robbed him. Teshae Gallon, the driver of the vehicle that was stopped by Marshal Triplett, told the police that Defendant Brown robbed the Rebel Gas Station, and had committed other robberies. Ms. Gallon told the officers that Defendant Brown had a shotgun in the backseat of the vehicle. Officers subsequently searched the vehicle and found a 12 gauge Revelation Western Auto shotgun in the back seat.

Defendant challenges the Government's assertion that Marshal Triplet stopped the automobile because it did not have illuminated headlights. Defendant argues that Marshal Triplet did not have either probable cause or reasonable suspicion to stop the automobile and therefore all evidence derived from the stop should be suppressed.

Marshal Matthew Triplet testified at the evidentiary hearing. He stated that on July 26, 2011, he was on routine patrol as a Las Vegas City Marshal. He stated that as a city marshal he patrols city owned property and also has authority to make traffic stops within the boundaries of the City of Las Vegas. Enforcement of traffic laws, however, is not a primary purpose of his duties. Marshal Triplet testified that he was on routine patrol at approximately 1:00 A.M. on July 26, 2011 and was traveling southbound on Rainbow Boulevard preparing to enter onto eastbound U.S. Highway 95. At that time, Marshal Triplet observed a tan Chevrolet Cavalier automobile that was traveling on northbound Rainbow and entering the on-ramp to eastbound U.S. Highway 95. Marshal Triplet saw that the vehicle did not have its headlights on. Marshal Triplet "got behind" the Chevrolet Cavalier and flashed his headlights off and on a couple of times to try to get the driver's attention to turn his or her headlights on. The driver did not respond to Marshal Triplet's attempts to get his or her attention in this manner. Marshal Triplet testified that he then activated the emergency lights on his patrol vehicle to effect a traffic stop. He testified that the Chevrolet Cavalier initially pulled over on the exit ramp to Jones Boulevard.[2] Marshal Triplet stopped

---

[2] The Jones Boulevard exit-ramp is the first exit-ramp on eastbound U.S. Highway 95 east of Rainbow Boulevard.

behind the vehicle, but as soon as he opened his door to step out of his patrol vehicle, the Chevrolet Cavalier took off and proceeded down the exit ramp towards Jones Boulevard. This conduct occurred one or two more times before the vehicles reached the traffic light at Jones Boulevard. Marshal Triplet testified that he activated the siren at that point. The Chevrolet Cavalier turned right and pulled over to the side of the street on southbound Jones Boulevard.

Marshal Triplet testified that as soon as the Chevrolet Cavalier stopped, a male passenger "jumped out" of the vehicle. Prior to that he was not aware that there was a passenger in the vehicle. The passenger walked to the rear of the Chevrolet Cavalier and initially stood behind the vehicle. Marshal Triplet testified that he instructed the individual to show his hands or get back into the vehicle. Marshal Triplet testified that the individual was concealing his hands and appeared to be holding something. Marshal Triplet testified that he drew his gun, at which point the individual "took off running southbound down Jones." Marshal Triplet gave out a radio communication as to the direction in which the passenger had fled. He then turned his focus to the female driver of the Chevrolet Cavalier.

Marshal Triplet testified on cross-examination that prior to stopping the Chevrolet Cavalier, he had not heard any police radio traffic regarding a robbery. He stated that prior to observing the Chevrolet Cavalier, he was on his way to a non-emergency call when he was diverted by the vehicle with no headlights on. Marshal Triplet testified that he did not issue the driver of the vehicle a citation for operating the vehicle without headlights. He stated that everything was turned over to the Las Vegas Metropolitan Police ("Metro"). Marshal Triplet did not prepare a written report regarding the incident, although he believes he "dictated one to Metro." He did not take any photographs of the vehicle with its headlights off. After the passenger fled, Marshal Triplet called for assistance and a Metro officer subsequently arrived at his location and began directing incoming police units.

Defendant Tracey Brown testified at the evidentiary hearing. Mr. Brown testified that the Chevrolet Cavalier's headlights were on. On cross-examination, he testified that he actually turned the vehicle's headlights on because the driver of the vehicle did not know how to turn them on. He acknowledged that he has approximately five felony convictions, including convictions for burglary

and grand theft auto.

## DISCUSSION

### 1. Whether the Automobile Stop Violated the Fourth Amendment.

An automobile stop by a police officer is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396 (1979). A passenger may challenge the stop of a vehicle on Fourth Amendment grounds even if he has no possessory interest in the vehicle. *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000). An officer, who has reasonable suspicion or probable cause to believe that a violation of traffic laws has occurred, may stop and detain the vehicle and its occupants to investigate the infraction. *Whren v. United States,* 517 U.S. 806 (1996); *United States v. Lopez–Soto,* 205 F.3d 1101, 1104–05 (9th Cir. 2000). So long as the police officer has reasonable suspicion or probable cause to initiate an automobile stop, it is generally irrelevant under the Fourth Amendment that the officer may have had other reasons for making the stop, such as a suspicion or hunch that the occupants may be engaged in other criminal activity. *Whren v. United States, supra.*

Nevada Revised Statute (NRS) §484D.100.1(a) states that "[e]very vehicle upon a highway of this State, . . . must display lighted lamps and illuminating devices as respectively required in this chapter for different classes of vehicles . . . [a]t any time from one-half hour after sunset to one-half hour before sunrise." NRS §484D.110.1 states that every motor vehicle, other than a motorcycle or moped, must be equipped with two headlights. It is therefore a violation of Nevada law to operate an automobile at nighttime on the highway without illuminated headlights.

Marshal Triplet was a credible witness both as to the substance of his testimony and his demeanor on the witness stand. He testified that he had received no information regarding a robbery prior to observing the Chevrolet Cavalier and effecting the traffic stop. The arrest report indicates that Marshal Triplet observed the vehicle very shortly after the robbery occurred. Based on the flight of the passenger and ensuing robbery investigation, it is not unusual that Marshal Triplet or other police officers did not issue a traffic citation to the driver of the vehicle. Nor is it suspicious that Marshal Triplet did not prepare his own written report regarding the stop. The robbery was investigated by the Las Vegas Metropolitan Police Department, and the arrest report

5

included a description of Marshal Triplet's involvement in stopping the Chevrolet Cavalier.

Defendant Brown testified that the vehicle's headlights were illuminated. Given his interest in suppressing the evidence against him, as well as his prior felony record which includes convictions for crimes of dishonesty, the Court discounts Defendant's credibility as compared to that of Marshal Triplet. The Court accepts Marshal Triplet's testimony that the headlights on the automobile were not illuminated and finds that he had probable cause to stop the vehicle for a violation of NRS §484D.100.1(a). Therefore, the stop did not violate the Fourth Amendment.

### 2. **Whether Defendant Has Standing to Challenge the Search of the Vehicle.**

Defendant does not make any argument in his motion to suppress that he has standing to challenge the search of the automobile, separate and apart from his contention that the stop was illegal. Defendant's motion states in this regard:

> Brown's main arguments do not directly challenge the search of the vehicle. Brown's main argument is that the initial stop of the car may be unlawful because the Marshall (sic) did not cite Gallon for driving without headlights and thus may have used this merely as a ruse to pull the vehicle over because he had a suspicion the occupants had been involved in a robbery without any probable cause.

*Motion to Suppress (#54), pgs. 6-7.*

The Government nevertheless argues that Defendant does not have standing to challenge the search of the automobile because he did not have a possessory interest in it, and even if he did, he abandoned his possessory interest when he fled.

Standing to assert a violation of the Fourth Amendment is determined by whether the individual asserting the violation had an expectation of privacy in the area searched. Two factors are relevant to this inquiry: First, did the individual manifest a subjective expectation of privacy in the area searched? Second, is society prepared to accept that expectation as reasonable? *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1162 (10th Cir. 1995). The Ninth Circuit has consistently held that a passenger, with no possessory interest in the automobile, has no reasonable expectation of privacy in the automobile that would permit him to challenge the search under the Fourth Amendment. *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000); *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005); and *United States v. Ewing*, 1226, 1229-30 (9th Cir.

2011).  According to the Las Vegas Metropolitan Police Department vehicle impound report, Laresha or Lakesha Coleman was the registered owner of the Chevrolet Cavalier.  *Government's Response (#59), Exhibit 3*.  Defendant Brown did not offer any evidence to show that he, in fact, had a possessory interest in the automobile.

The courts have also held that in the absence of police misconduct, it may be inferred that an automobile occupant who flees following a police stop or chase has intentionally abandoned his interest in the automobile.  *United States v. Quiroz-Hernandez*, 48 F.3d 858, 864 (5th Cir. 1995); *United States v. Walton*, 538 F.2d 1348, 1354 (8th Cir. 1976).  *See also United States v. Magana*, 2007 WL 680784, *3 (D.Nev. 2007).  It is undisputed that Defendant Brown, after momentarily stopping at the rear of the automobile, fled after Marshal Triplet instructed him to get back into the vehicle or show his hands.  By such flight, Defendant abandoned any possessory interest that he otherwise may have had in the automobile.  Defendant Brown therefore has no standing to challenge the search of the automobile.[3]

### 3. Whether the Pretrial Identification of the Defendant by the Store Clerk was Obtained Under Circumstances that were Unduly Suggestive.

Defendant argues that the store clerk's identification of him as the individual who robbed the gas station was obtained under circumstances that were unduly suggestive such that it violated the due process clauses of Fifth or Fourteenth Amendments.  Defendant therefore moves to preclude the store clerk from identifying Defendant at trial as the individual who robbed the store. The parties have stipulated to the facts set forth in the arrest report and in the store clerk's written statement relating to his identification of the Defendant as the individual who robbed the store. This includes the stipulation that at the time the clerk identified Defendant, he was in handcuffs and had a cut on his head, caused by a bite from the K-9 unit dog.

The store clerk stated in his hand written statement, that "a black male came into the store with a 12 gauge shot gun and robbed me."  The individual "came in front of the register counter with a 12 gauge shot gun and had it pointed at my mid section told me it was a robbery."  The

---

[3] The Government did not present any evidence as to whether the search of the automobile complied with the Fourth Amendment and the Court makes not finding on that question.

7

1  robber ordered him to place money, cigarettes and cigarellos in a bag and then lay on the floor and
2  count to ten. *Government's Response to Motion to Suppress (#59), Exhibit 2, Voluntary Statement,*
3  *pg. 1.*
4      The store clerk further described the robber as follows:

> The guy was a black male wearing a white or gray long sleeved shirt plain. Blue jeans, work boots, and a ball cap. Some facial hair. I think a goatee. He had a 12 gauge shotgun. Looked like a wood stock single shot.

*Voluntary Statement, pg. 2.*

    The store clerk described his identification of Defendant as follows:

> The officer and I went down to where the suspect was being held. And I am 100% sure that is the guy that came into my store [and] robbed me. I am sure because of the cloths (sic) he was wearing the white long sleeve shirt [and] the jeans, and the boots. When we were leaving, he looked up at the car [and] I recognize his face. When he looked at me in the store [and] said I don't want to hurt you.

*Id.*

    The statement was signed at 2:45 A.M. which would have been approximately an hour and fifty to fifty-five minutes after the robbery. The record is not otherwise clear as to how soon after the robbery the store clerk made his identification of the Defendant as the robber.

    In *United States v. Jones*, 84 F.3d 1206, 1209-10 (9th Cir. 1996), the court set forth the due process standard governing witness identifications of suspects as follows:

> An identification procedure that is so unduly suggestive as to give rise to a substantial likelihood of mistaken identification may violate due process. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). To determine whether an identification procedure is impermissibly suggestive, we review the totality of the circumstances. *Biggers,* 409 U.S. at 199, 93 S.Ct. at 382; *Matta-Ballesteros,* 71 F.3d at 769. The factors we consider in evaluating the likelihood of misidentification include: (1) the witness's opportunity to view the criminal at the time of crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Biggers,* 409 U.S. at 199-200, 93 S.Ct. at 382-83; *Matta-Ballesteros,* 71 F.3d at 769.

    In *Jones*, three bank tellers were taken to the location along the freeway where the defendant, the suspected bank robber, was detained. The defendant was surrounded by police

officers who were holding up several items which matched the disguise worn by the robber. In holding that the witnesses' identifications of the defendant as the bank robber were not obtained under unduly suggestive circumstances, the court stated that the witnesses had the opportunity during the robbery to get a good, complete look at the robber and the descriptions of the robber that they gave the police were accurate and were generally consistent. The identifications were made ten to fifteen minutes after the robbery and each witness was confident in her identification of the defendant as the bank robber. Although acknowledging that the circumstances of the roadside identification were suggestive, the court stated:

> We have previously upheld suggestive procedures, recognizing the benefit of permitting witnesses to make an identification while the image of the perpetrator is still fresh in their minds. *See United States v. Kessler,* 692 F.2d 584, 585 (9th Cir. 1982). The fact that only one suspect is presented for identification does not make the identification procedure invalid. *Id.* As we noted in *Kessler,* "where the procedure employed does not give rise to 'a very substantial likelihood of irreparable misidentification,' identification evidence is for the jury to weigh." *Id.* at 587 (quoting *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977)).

In this case, the circumstances of the identification were suggestive in that the store clerk was taken to the location where Defendant Brown was in custody. The parties have stipulated that Defendant was in handcuffs and had a cut on his head from the dog bite. The Court presumes that the clerk observed these matters and that police officers were also in the immediate vicinity of the Defendant when the store clerk observed him from the police vehicle. The store clerk's voluntary statement indicates that he got a good look at the robber when he entered the store, pointed the shotgun at him and ordered him to place money and other items in the bag. He saw the robber's face and was able to provide a reasonably specific identification of his clothing--shirt, pants and boots, as well as his facial hair. There is no evidence that the clerk's description of the robber was at variance with the appearance of the Defendant. The clerk also stated that as he was leaving the location where Defendant was detained, the Defendant looked up and the clerk recognized his face. The identification also occurred within a reasonably short time after the robbery, such that the clerk's recollection of the robber's appearance was likely still fresh in his mind.

. . .

Based on all the relevant factors, the circumstances under which the store clerk identified Defendant Brown as the robber were not so unduly suggestive as to create a very substantial likelihood of irreparable misidentification. The store clerk's identification of Defendant as the robber should not be suppressed.

## CONCLUSION

Based on the foregoing, the Court finds that the stop of the vehicle in which Defendant was riding was supported by probable cause and did not violate the Fourth Amendment. Defendant does not otherwise have standing to challenge the search of the automobile under the Fourth Amendment. Finally, the store clerk's identification of Defendant Brown as the person who robbed the store was not made under circumstances that were so unduly suggestive as to preclude its admissibility at trial. Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Suppress Evidence for Fourth Amendment Violation and Unconstitutional Suggestive Identification Procedures (#54) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 4th day of October, 2013.

*George Foley Jr.*
GEORGE FOLEY, JR.
United States Magistrate Judge